**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IN RE APPLICATION OF KL CAPITAL LIMITED FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782 | Case No. ____________ |

***EX PARTE* APPLICATION FOR JUDICIAL ASSISTANCE IN OBTAINING EVIDENCE FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782 AND SUPPORTING MEMORANDUM OF LAW**

Applicant KL Capital Limited ("**KL Capital**" or "**Applicant**") respectfully submits this *Ex Parte* Application for Judicial Assistance, pursuant to 28 U.S.C. § 1782, in obtaining documentary evidence for use in a foreign proceeding (the "**Application**") pending in England and Wales. In support, Applicant respectfully states as follows:

## I. INTRODUCTION

The facts relevant to this Application are set forth in the Declaration of Jonathan Sachs (the "**Sachs Declaration**," attached hereto as **Exhibit 1**). Applicant seeks assistance from the United States District Court for the Southern District of Florida to obtain documentary evidence from HSBC Bank USA, N.A. ("**HSBC**" or "**Respondent**") which resides or may be found in this District. Specifically, Applicant seeks evidence to support its pending civil claim filed May 14, 2024, in the High Court of Justice, Business and Property Courts of England and Wales, King's Bench Division, Commercial Court (the "**English Proceeding**") and a contemplated proceeding against the **Kentown Wizard Foundation** (the "**Contemplated Proceeding**").[1]

[1] Applicant advises the Court of a related 28 U.S.C. § 1782 proceeding filed in the United States District Court for the Middle District of Florida seeking evidence from Chartham LLC d/b/a Howell International Tax ("**Chartham**"), Simon Benedict Howell ("**Howell**"), and Bogin Munns & Munns PA. ("**BMM**"). That application was mailed to the Middle District of Florida clerk for filing on August 26, 2026. As of the filing of the instant Application, the Middle District of Florida clerk has not yet docketed the documents and no case number has been assigned. Upon receipt of

In the English Proceeding, Applicant has advanced claims of deceit, conspiracy, breach of fiduciary duty, and dishonest assistance arising out of the £54.1 million acquisition of Gold Medal International Limited ("**Gold Medal**"). Sachs Decl. ¶ 6 (Exhibit A). Kenneth Edward Townsley ("**Townsley**"), who spearheaded the alleged conspiracy, served as the sole shareholder and director of Gold Medal, which he decided to sell in early 2006. Sachs Decl. Ex. A ¶¶ 4; 8. Applicant alleges that Townsley, together with Kevin Philbin ("**Philbin**") (Townsley's solicitor and former director of Gold Medal), his firm, **By Corporate LLP** (formerly **Atticus Legal LLP**), and non-party Terry Fisher ("**Fisher**") (together, the **Conspirators**"), conspired to inflate Gold Medal's reported profits artificially so as to induce a third-party buyer to pay well in excess of what the business was worth. *Id.* ¶¶ 6; 9.[2] Further, an Application to amend the operative pleading is currently pending in the English Proceeding—incorporating new parties and a new claim—relying on the transfer of the Windermere Property. *Id.* ¶ 15.

As discussed *infra*, the conspiracy involved routing approximately £12 million of declared dividends through By Corporate LLP's client account and using the bulk of those proceeds to pay Gold Medal's operating costs off the books, inflating the company's apparent 2008 profits. *Id.* ¶¶ 10; 11; 17. Ultimately, the scheme induced Thomas Cook Group[3] to pay £54.1 million for a business worth no more than £28 million. *Id.* ¶¶ 14, 16, 18.

To conceal payments for Gold Medal's operating expenditures, the conspirators established a trust in Gibraltar with Townsley as the sole beneficial owner and sub-trusts and

---

a case number, and pursuant to Southern District of Florida Local Rule 3.8, Applicant will file and serve a "Notice of Pending, Refiled, Related or Similar Action."

[2] Stephene Bacon, former Chief Financial Officer of Gold Medal and subsequently Chief Financial Officer for the vehicle incorporated to acquire Gold Medal, has been removed as defendant. Sachs Decl. ¶ 8 n. 2.

[3] Applicant KL Capital sues as assignee of the claims of Thomas Cook Group Plc and Thomas Cook Retail Limited, both now in liquidation, Ex. A ¶¶ 2.3–2.4.

appointments made in favor of Philbin, Fisher, and Bacon. *Id.* ¶ 10.3. The conspirators paid Gold Medal's operating expenditures personally and were later reimbursed through these trusts to keep costs off Gold Medal's books. *Id.* Throughout the sale, the conspirators continued to artificially inflate the projected profits of the business by making payments through By Corporate LLP's client account—again, keeping these payments off Gold Medal's books. *Id.* ¶ 20.

KL Capital's estimated damages total an estimated 57 million Great British Pounds, or approximately ***USD $77.1 million***. *Id.* ¶ 3; Sachs Decl. ¶ 11. KL Capital's loss underscores the scale of the fraud, and the trail leads to this District.

In 1999, Gold Medal Travel Group PLC purchased real property at 6261 Louise Cove Drive, Windermere, Florida 34786 (the "**Windermere Property**") for $1,150,000. *Id.* ¶¶ 16–17. Three years later, the company conveyed it to Townsley personally for a recited $5 million and encumbered the property with a $3 million mortgage in favor of HSBC. *Id.* ¶¶ 19–20. In 2019, Townsley quitclaimed the Windermere Property, retaining a life estate and designating as remainderman the Kentown Wizard Foundation—an England and Wales-registered charity to which a substantial amount of assets may be traced from the underlying fraud alleged in the English Proceeding. *Id.* ¶¶ 22–25.

On December 30, 2024—*while serving as Defendant in the English Proceeding*—Townsley created a trust bearing his name (the "**Townsley Trust**"), deeded the Windermere Property out of his own name and into the trust, and executed a Last Will and Testament pouring his entire residuary estate into the Townsley Trust. *Id.* ¶¶ 26–28. On January 24, 2026, Townsley died in Orange County, Florida, in this District. *Id.* ¶ 33.[4] The Windermere Property is currently

[4] Townsley's estate has been substituted for him in the English Proceeding, where it is represented by Deborah Maxine Bamber, Townsley's niece and expected defendant to be joined in the English Proceeding. Sachs Decl. ¶ 12; Ex. B ¶ 7A.

valued at approximately $9.2 million. *Id.* ¶ 35. Chartham, Howell, and BMM are the professionals and firms who prepared Townsley's Florida transactions. Howell and, likely, his firm, Chartham, were involved in establishing and administering the Townsley Trust. *Id.* ¶ 29. Townsley also nominated Howell as a Co-Personal Representative of his estate. *Id*. BMM prepared the December 30, 2024 deed, with its office address appearing as the residence of both attesting witnesses to the Will and one of its lawyers notarizing the Affidavit of Proof of Will. *Id.* ¶¶ 26; 30; 34.

Applicant seeks documents and communications from HSBC sufficient to identify relevant accounts and transfers between Townsley, the English Proceeding defendants, BMM, Chartham, Howell, and others relevant to the Pending and Contemplated Proceedings. HSBC is not a party to the English Proceeding or expected party to any Contemplated Proceeding. *Id.* ¶ 55.

## II. <u>FACTUAL BACKGROUND</u>

On or around early 2006, Townsley decided to sell Gold Medal and exit the travel business. Sachs Decl. Ex. A ¶ 8. At the time, Townsley was the sole shareholder and director of Gold Medal, whose group of companies sold wholesale travel services, including flights, car hire, and hotel rooms, to independent travel agents. *Id.* ¶ 4. Townsley worked toward a sale of the company with his co-conspirators Bacon, Philbin, Atticus Legal LLP, and Fisher. Together, the Conspirators agreed to artificially inflate the profits in two stages, with the end goal of inducing a buyer to purchase the company at an inflated price and pocket the resulting windfall for themselves. *Id.* ¶ 9. The buyer was the Thomas Cook Group. *Id.* ¶ 2.1.

### A. <u>Stage One: Dividends used to Disguise Expenditures and Inflate Gold Medal's Profits</u>

The first stage of the alleged fraud centers on actions taken before and throughout the sale of Gold Medal to Thomas Cook Group. Between 2006 and 2009 Gold Medal paid dividends totaling £12,611,672 into Atticus Legal's client account. Sachs Decl. Ex. A ¶ 10.1. Of that sum, £3,742,304 was paid to Townsley; the balance, together with further monies received by Atticus

Legal from the sale of a property, is alleged to have been used directly or indirectly to pay items of operating expenditure that ought properly to have been provided for in Gold Medal's accounts but was not. *Id.* ¶ 10.2. The Amended Particulars of Claims itemizes that expenditure: £2,010,000 to settle the claims of a former director, Wayne Pearce; £2,000,000 paid to Fisher as a signing-on fee for joining Gold Medal for the purpose of preparing it for sale; and approximately £4,859,068 of Gold Medal operating expenditure. *Id.* ¶¶ 10.2.1–10.2.3. The transmission of dividends in this way not only misled potential buyers but also permitted Fisher and Gold Medal to evade income tax and national insurance payments that would otherwise have been due. Sachs Decl. ¶ 9.

Trusts were the mechanism of concealment. Sachs Decl. Ex. A ¶ 10.3. Philbin and/or Atticus Legal are alleged to have arranged for a trust to be established in Gibraltar of which Townsley appeared to be the sole beneficial owner. *Id.* ¶ 10.3.1. The trustee of that trust ultimately declared sub-trusts and/or made appointments in favor of Philbin, Fisher, and Bacon. *Id.* ¶ 10.3.2. In turn, Fisher and/or Philbin personally paid Gold Medal's expenditures and then, once Townsley had approved those payments, were reimbursed by payments from Atticus Legal to their trusts. *Id.* ¶ 10.3.3.

On or around September 2008, the Conspirators were in discussions with several potential buyers, including Thomas Cook Group. *Id.* ¶ 12. Thereafter, at a meeting in the lobby bar of the Shangri-La Hotel, Bangkok, Townsley agreed to pay Fisher, Bacon, and Philbin a percentage of the consideration received from an acquisition of Gold Medal by Thomas Cook Group. *Id.* ¶ 13.

The Conspirators then induced Thomas Cook Group: to value the Gold Medal shares at £54.1 million and to make a formal offer to acquire the entire issued share capital of the company from Townsley for that figure; to incorporate Thomas Cook Group Investments Limited as the acquisition vehicle; to cause that vehicle to enter a Share Purchase Agreement under which it paid

over £24 million in cash and allotted Townsley ordinary shares; to acquire shares valued at £5.88 million held by Gold Medal Travel Group Plc in PlantSelect Limited and to convey those shares to Townsley; to capitalize Thomas Cook Investments Limited to allow it to pay cash to Townsley as part of the sale; to cause Thomas Cook Retail to enter into Business Transfer Agreement for the sale of FlightSavers to Thomas Cook Investments Limited; and several other inducements as described in the Particular of Claims. *Id.* at ¶ 14.

In sum, the total consideration paid for Townsley's share in Gold Medal was £54,100,000. *Id.* at ¶ 16. Had Thomas Cook Group known about Gold Medal's true profits, it would either not have proceeded or would have paid no more than £28 million for the company. *Id.* ¶ 18.

### B. Stage Two: Inflating Profits to Accelerate Purchase

The second stage centers on the continued management of Gold Medal following completion of the sale. Sachs Decl. Ex. A ¶ 20. The Conspirators are alleged to have: caused £1,041,000 of the pre-completion dividend to be applied to Brilliant Media (which funded Google Adwords) without those costs appearing in the books of the combined business; retained £1,650,000 of the cash consideration in Atticus Legal's client account to reimburse expenses not provided for in the books; and caused the combined business to project profits of £37 million in the period which Tomas Cook Retail was entitled to exercise its call option. *Id.* ¶¶ 20.1–20.3.

On that footing, Thomas Cook Retail agreed to accelerate its acquisition of the Sale Consideration Shares and to pay £47.5 million over the course of 2010 and 2011. *Id.* ¶¶ 21–21.2. Applicant alleges that a further £4.65 million of the 2010 consideration was retained and used to continue managing profits and to conceal the ongoing conspiracy, and the additional sum attributable to the second stage is alleged to be £31,637,000. *Id.* ¶¶ 22; 24. Aggregate losses assigned to Applicant are pleaded at approximately £57,000,000. *Id.* ¶¶ 3, 38.

### C. Applicant's Discovery of the Alleged Fraud

On or around 2012, Thomas Cook Group became highly suspicious of certain developments and transactions: Fisher left Thomas Cook Investments in or around December of 2009; Bacon left the company around September 2011 shortly after he revised the group's total profits from about £37 million to about £23 million; and profits began to fall and subsidiaries of Gold Medal were required to make significant prior year adjudgments. Sachs Decl. Ex. A ¶ 41. Thomas Cook Group thereafter retained KPMG to carry out a forensic audit, which report resulted in a strong suspicion of fraud. *Id.* ¶ 42. However, Thomas Cook Group's solicitors were unable to identify evidence upon which to allege fraud against defendants, among other findings. *Id.* ¶ 43. Ultimately, Thomas Cook Group and/or its subsidiaries did not discover the alleged fraud until the assignment to Applicant on or around January 23, 2024, notwithstanding the earlier forensic investigation that was unable to uncover it. Sachs Decl. ¶ 11.

### D. The English Proceeding

With respect to stage one, and pursuant to Sections 171–177 of the Companies Act 2006, Townsley, Bacon, Fisher, and Philbin owed fiduciary duties to Gold Medal to act in good faith and in the best interest of Gold Medal as well as exercise the powers conferred on them as directors for proper purposes. Sachs Decl. Ex. A ¶ 29.1. The use of declared dividends to meet operating and other expenditures and subsequent omission of same from the company books was dishonest and constitutes breaches of those duties. *Id.* ¶ 29.2.

With respect to stage two, Bacon, Fisher, and Philbin owed, and breached, fiduciary obligations to Thomas Cook Investments as directors of that company. *Id.* ¶ 30. Philbin breached those obligations by failing to report or disclose wrongdoing of Bacon and Fisher to Thomas Cook Investments. *Id.* ¶ 30.2. Bacon and Fisher acted as Townsley's nominated directors of Thomas

Cook Investments and Townsley authorized or otherwise ratified their conduct. *Id.* ¶ 36. Further, Atticus Legal, through Philbin, is alleged to have committed wrongful acts pursuant to Section 6(4) of the Limited Liability Partnerships Act 2000. *Id.* ¶ 37.

Dishonest assistance was provided by Atticus Legal with respect to both stages of the conspiracy by: permitting its client account to be utilized to conceal fraudulent activity; procuring the settling of the Gibraltar trusts to further the same concealment; procuring the sale of said loan notes to a connected third party with the goal of insulating those sums against any attempts by Thomas Cook Group to avoid payments against those notes; and holding or controlling sum paid pursuant to the loan notes in its client account, despite Townsley having apparently disposed of his interest or entitlement under the loan notes to a third party. *Id.* ¶ 31–31.4.

In addition, Townsley dishonestly assisted Bacon and Fisher in breaching their fiduciary obligations to Thomas Cook Investments by permitting sums otherwise due to him to be used for continuing profit management. *Id.* ¶ 32. Together, Defendants are alleged to be joint tortfeasor by reason of substantial assistance in committing the fraud. *Id.* ¶ 33–34. Defendants caused misleading financial statements, accounts, and projections to be produced which deliberately overstated Gold Medal's profitability with the intent of inducing Tomas Cook Group and its subsidiaries to enter into those transactions. *Id.* ¶ 35. Applicant's total losses are approximately £57 million and claims interest pursuant to Section 35A of the Senior Courts Act 1981. *Id.* ¶¶ 38–39.

On June 7, 2026, Applicant applied for an order to amend the operative pleading to include claims against David Anthony Bamber and Deborah Maxine Bamber pursuant to s. 423 of the Insolvency Act 1986. Sachs Decl. ¶ 12. Evidence surrounding Townsley's transfer of the Windermere Property will support this pending claim, which is likely to be granted. *Id.* ¶ 15.

**E. The Contemplated Proceeding**

Applicant also seeks evidence for use in a reasonably Contemplated Proceeding against the Kentown Wizard Foundation, and potentially others, in the London High Court or other foreign tribunal. Sachs Decl. ¶ 50 (describing pre-suit letter served on Kentown Wizard Foundation detailing evidentiary support and list of potential material witnesses in support of contemplated claim under Section 423 of the Insolvency Act 1986). While the foundation is likely to be joined as a defendant to the Pending Proceeding if pre-suit negotiations prove to be unsuccessful, Applicant may instead initiate a new proceeding against the foundation. *Id.* If a satisfactory substantive response to the pre-suit letter is not received by September 7, 2026, Applicant anticipates filing its Section 423 claim against the foundation. *Id.*

**F. The Windermere Property and Estate Planning Instruments**

The Windermere Property has moved between four record owners, each connected to Townsley. On January 22, 1999, Townsley's Gold Medal Travel Group PLC purchased the Windermere Property from Isleworth West LP for $1,150,000. Sachs Decl. ¶ 16. On July 30, 2002, that same Townsley company conveyed the Windermere Property directly to Townsley, in his own name, for a recited $5,000,000. *Id.* ¶ 19. Months later, Townsley encumbered the Windermere Property with a $3,000,000 mortgage in favor of HSBC. *Id.* ¶ 20.

On May 21, 2019, Townsley conveyed the Windermere Property by quitclaim deed to himself for life, with the remainder vested in the Kentown Wizard Foundation. *Id.* ¶ 22. Townsley had registered the Kentown Wizard Foundation as a charity in England and Wales on October 13, 2015. *Id.* The foundation's assets consist of over £80 million—a substantial amount of which are alleged to have been received from the fraud described in the English Proceeding. *Id.* ¶ 24.

By a Special Warranty Deed dated December 30, 2024, Townsley conveyed the Windermere Property to himself "as Trustee of the TOWNSLEY TRUST dated December 30,

2024, with full power to transfer, assign and encumber such interest." *Id.* ¶ 26. The deed was prepared by, and directed to be returned to, SI Valbh, Esq. of BMM. *Id*. The same day, Townsley executed a Last Will and Testament. *Id.* ¶ 28. Article III of the Will devises his entire residuary estate to "the Trustee of that certain Trust known as the TOWNSLEY TRUST DATED December 30th, 2024, as amended and/or restated," and directs that the property so received "shall be administered solely in accordance with the provisions in that Trust Agreement." *Id.* Article IV nominates Sheila S. Sheehan and Howell as Co-Personal Representatives. *Id*. ¶ 29. The Will was witnessed by two individuals whose stated addresses are 1000 Legion Place, 10th Floor, Orlando, Florida—BMM's office—and the accompanying Affidavit of Proof of Will was notarized by Sandip Valbh of BMM. *Id.* ¶ 30. The Townsley Trust instrument itself is not of record.

### G. Townsley's Death and the Florida Probate Filings

Townsley died on January 24, 2026, as a resident of Orange County, Florida. Sachs Decl. ¶ 33. His Will recites that he was a citizen of Great Britain, a permanent resident of the State of Florida, unmarried, and without children. *Id.*

On June 23, 2026, two matters were opened in the Circuit Court in and for Orange County, Florida, Probate Division. *Id.* ¶ 34. In *In re Estate of Kenneth Edward Townsley*, Case No. 2026-CP-002087-O, the Will was filed for safekeeping together with a death certificate. *Id*. In *In re Estate of Kenneth Edward Townsley*, Case No. 2026-CP-002105-O, a caveat was filed by Sheila Sheehan, who identifies her interest as that of a nominated personal representative under the Will and designates Sandy Valbh of BMM as her agent for service of notice. *Id.* ¶ 32, 34.

## III. EVIDENCE SOUGHT

Applicant seeks assistance from the United States District Court for the Southern District of Florida to serve a subpoena on HSBC seeking documents and communications sufficient to identify relevant accounts of Townsley, the English Proceeding defendants, and others. The

evidence sought includes wire transfer records, account statements, deposit records, applications for credit and related documents pertaining to loans and mortgages, and account opening and closing statements. *See* proposed subpoena, Exhibit 2.

Townsley maintained a banking relationship with HSBC as early as 2002, when he encumbered the Windermere Property with a $3 million mortgage in favor of HSBC. Sachs Decl. ¶¶ 19–20. Furthermore, documents obtained by Applicant confirm that HSBC maintains records concerning Townsley's financial affairs that are relevant to the Pending Proceeding. First, in a correspondence between a representative of Atticus Legal LLP and Bacon concerning dividend payments made between 2006 and 2009—*the very dividends at issue in English Proceeding*—the materials reference documentation from HSBC. *Id.* ¶¶ 45–48. Second, an attachment to an e-mail exchange between Philbin and Townsley references an auditor's request to review certain financial records of Philbin and Fisher following accusations of fraud on Townsley, and the materials provided in response included HSBC records. *Id*.

HSBC records are also relevant for the period after the sale of Gold Medal. The English Proceeding describes Townsley's use of lawyers, law firms, and others as part of his asset concealment structure, which proved to be sophisticated enough to defeat a forensic audit. The sought § 1782 discovery will shed light on whether a similar scheme was employed in Florida. Indeed, publicly available information already indicates as much: Townsley created the Townsley Trust, signed his Last Will and Testament, and deeded the Windermere Property to himself as trustee of that Trust while a £57 million fraud claim was pending against him in London. BMM prepared and notarized those instruments, and Sheehan, along with Howell and Chartham, are believed to be positioned to control the disposition of those assets going forward. The Windermere Property, along with its $3 million mortgage from HSBC, passed through the Kentown Wizard

Foundation as remainderman prior to its transfer into the trust. Their financial records thus bear directly on the allegations in the English Proceeding and Contemplated Proceeding.

Crucially, Applicant's pending Amended Particular of Claims pleads a new cause of action under Section 423 of the UK Insolvency Act 1986 arising from Townsley's uncompensated September transfer of a flat in Lytham St. Annes. Sachs Decl. Ex. B ¶ 46–49. The claim expressly relies on the December 30, 2024 transfer of the Windermere Property into the Townsley Trust, akin to the use of the Gibraltar trust and sub-trusts, as the mechanism for concealment that left Townsley effectively devoid of assets under his own name. *Id*.

## IV. ARGUMENT

### A. Standard for Granting Relief

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Section 1782 "provide[s] for assistance in obtaining documentary and other tangible evidence as well as testimony." *Id*. at 248.

The statute requires that: (1) the person from whom discovery is sought must reside or be found in the district in which the application is made; (2) the discovery is "for use" in a proceeding before a foreign or international tribunal; (3) the application is made "by a foreign or international tribunal" or "any interested person"; and (4) the request must seek evidence whether "testimony or statement" of a person or a production of "a document or other thing." 28 U.S.C. Section 1782; *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1198–99.

In the Eleventh Circuit, Section 1782 applications must meet four statutory requirements. *Id*. When the four statutory requirements are met, courts consider four discretionary factors, bearing in mind Section 1782's twin aims of "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance

to our courts." *Intel*, 542 U.S. at 252. The court's discretion is guided by the discretionary factors recited by the Supreme Court in *Intel*:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach" and therefore their evidence may be "unobtainable absent § 1782(a) aid";
>
> (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";
>
> (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and
>
> (4) whether the § 1782(a) request is "unduly intrusive or burdensome."

*Intel*, 542 U.S. at 264–65.

District courts may, and indeed typically do, grant Section 1782 applications brough on an *ex parte* basis. *See In re Clerici*, 481 F. 3d 1324, 1329 (11th Cir. 2007) (affirming denial of motion to vacate order granting *ex parte* Section 1782 application); *In re Vedam*, No. 8:22-mc-26, 2022 U.S. Dist. LEXIS 219637, at *5 (M.D. Fla. Nov. 3, 2022) (noting that "[d]istrict courts may grant applications under Section 1782 on an *ex parte* basis" and collecting cases). There are no due process concerns with granting Section 1782 relief *ex parte* because "a respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to the Federal Rules of Civil Procedure 45(c)(3)." *Id.* at *5–6 (citing *Gushlak v. Gushlack*, 486 F. App'x 215, 217 (2d Cir. 2012)).[5]

[5] Applicant will provide notice of this Application to the parties in the Pending Proceeding and intended defendant in the Contemplated Proceeding immediately after the Court accepts and dockets the Application.

### B. The Applicants Meet the Mandatory Requirements for Granting Relief

As demonstrated below, the Application satisfies the statutory requirements and, therefore, this Court should grant the relief sought in the Application.

#### 1. The Respondents Reside or Are Found in This Jurisdiction

For purposes of Section 1782, a corporation or other entity is found in the district where it has an office. *In re Ex parte Petition by AG*, No. 21-mc-23671, 2021 U.S. Dist. LEXIS 217214, at *3 (S.D. Fla. Nov. 10, 2021). *See Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1269 (11th Cir. 2014) (corporation was "found" in the district where it had an office and did business).

HSBC operates at least one of its branches in Miami at 1441 Brickell Ave, 16th Fl. Miami, FL 33131. *See In re DINA Hlace for An Ord. of Discovery Pursuant to 28 U.S.C. § 1782*, No. 19-MC-21553-RAR, 2023 U.S. Dist. LEXIS 89048, at *2 (S.D. Fla. May 22, 2023) (granting § 1782 Application seeking documents from financial institutions, including HSBC). Thus, HSBC is found in this district.

#### 2. The Discovery Sought is For Use in a Pending and Contemplated Proceeding in a Foreign Tribunal

"The 'for use' statutory requirement is satisfied when Applicant can: (1) inject the requested information into a foreign proceeding and (2) the discovery is something that will be employed with some advantage or serve some use in the proceeding." *In re Valech*, No. 1:20-mc-23408-WPD, 2020 U.S. Dist. LEXIS 245779, at *20–21 (S.D. Fla. Dec. 31, 2020) (cleaned up). "[A]ctions before the . . . High Court of Justice constitute foreign tribunals for purposes of Section 1782." *In re Google Inc.*, No. 14-mc-80333, 2014 U.S. Dist. LEXIS 173085, at *5 (N.D. Cal. Dec. 15, 2014); *In re Michael Wilson & Partners, Ltd.*, No. 6:08-mc-64, 2008 U.S. Dist. LEXIS 123412,

at *5 (M.D. Fla. June 3, 2008) (granting Section 1782 Application for use in a pending proceeding before the High Court of England and Wales).

Section 1782 does not require that a foreign proceeding be "pending" or "imminent" at the time of the application. *See Intel*, 542 U.S. at 258–59. The "proceeding in a foreign or international tribunal" need only be "within reasonable contemplation." *Id.* at 259. To satisfy the "within reasonable contemplation" requirement, Applicant must provide only "some objective indicium that the action is being contemplated." *Certain Funds, Accounts &/Or Inv. Vehicles Managed By Affiliates Of Fortress Inv. Grp. L.L.C. v. KPMG, L.L.P.*, 798 F.3d 113, 123 (2d Cir. 2015). "At a minimum, a § 1782 Applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Id.* at 124. Applying *Intel*, this Court and others have authorized discovery under Section 1782 when foreign proceedings in England were merely within reasonable contemplation. *In re England/Bahamas*, No. 20-MC-61696, 2021 U.S. Dist. LEXIS 142293, at *13 (S.D. Fla. July 30, 2021) (denying motion to quash subpoena issued pursuant to Section 1782 for use in contemplated proceedings in England and the Bahamas); *In re Oak Tr.*, No. 5:21-mc-00007-JSM-PRL, 2021 U.S. Dist. LEXIS 71107, at *4 (M.D. Fla. Apr. 13, 2021) (granting Section 1782 Application for use in a contemplated proceeding before the High Court of England and Wales).

Applicant expects the documents and communications sought from HSBC will identify relevant accounts and demonstrate the flow of funds between Townsley and others. Sachs Decl. ¶¶ 45–52 (discussing relevance of HSBC records to Pending and Contemplated Proceedings for the relevant period). Townsley is believed to have transferred a substantial amount of funds held at HSBC to third parties and/or the Townsley Trust. *Id.* ¶ 45. The discovery is also directly relevant to Applicant's Section 423 claim because that claim specifically alleges that Townsley transferred

assets with the purpose of putting them beyond the reach of the Applicant and otherwise prejudicing the Applicant's interests as a creditor. HSBC's records are expected to reveal the movement of funds and assets among Townsley, the Townsley Trust, the Kentown Wizard Foundation, and related persons and entities, and therefore may provide evidence of the very transactions and asset-concealment arrangements that form the basis of, and would satisfy the elements of, the Section 423 claim. *Id.* ¶ 52.

The sought records will be employed to advance Applicant's claims, satisfying Section 1782's second statutory factor.

3. The Applicant Is An Interested Person

A person who has "participation rights" and "possesses a reasonable interest in obtaining judicial assistance . . . qualifies as an interested person within any fair construction of that term." *Intel*, 542 U.S. at 256–57 (internal citations omitted). "The legislative history to § 1782 makes plain that 'interested person' includes a party to the foreign litigation." *See Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38, 42 (2d Cir. 1996) (internal citations omitted). Here, Applicant is an "interested person" in its capacity as a party to the English Proceedings. Sachs Decl. ¶ 6. The Applicant therefore meets the third statutory requirement under 28 U.S.C. Section 1782(a).

4. The Application Seeks Documents from Respondent

Documentary evidence is "evidence" within the meaning of Section 1782. *In re Clerici*, 481 F.3d at 1331–32. *See also Consorcio Ecuatoriano de Telecomunicaciones S.A.*, 747 F.3d at 1269 (document production and deposition testimony are forms of potential evidence satisfying the second requirement).

Section 1782 authorizes the production of documents from a respondent with "the legal right to obtain the documents requested upon demand" and Applicant seeks just that: documents

and communications that HSBC would maintain in the ordinary course of business. *Sergeeva*, 834 F.3d at 1201. The fourth statutory requirement is therefore satisfied.

**C. <u>This Court Should Exercise Its Discretion in Favor of Granting Relief</u>**

Once the District Court has determined that the mandatory requirements for relief under § 1782 are met, the Court is free to grant discovery in its discretion. As set forth below, the discretionary factors identified by the Supreme Court in *Intel* weigh heavily in favor of granting the relief requested herein. *See Intel*, 542 U.S. at 264–65.

1. <u>Respondents Are Not Participants in the Pending Proceeding</u>

"[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *In re Glozman*, No. 25-MC-24525, 2026 U.S. Dist. LEXIS 22687, at *10 (S.D. Fla. Feb. 3, 2026) (quoting *Intel*, 542 U.S. at 264).

HSBC is not a participant to the English Proceeding and is not an anticipated defendant to the Contemplated Proceeding, should one be instituted. Sachs Decl. ¶ 55. The evidence sought is thus unobtainable absent this Court's aid. *Id.* ¶ 56. Further, the evidence sought is outside the foreign tribunal's effective reach. *Id*. This factor weighs in favor of granting the Application.

2. <u>English Courts are Receptive to Section 1782 Discovery</u>

Second, the Court may consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264.

English courts are receptive to Section 1782 evidence. *See In re Novoship (UK) Ltd.*, No. 20-60876-MC, 2020 U.S. Dist. LEXIS 107257, at *7 (S.D. Fla. June 17, 2020) ("[T]here is no indication that the courts of the United Kingdom would be unreceptive to American evidence and, in fact, § 1782 is routinely used to obtain evidence for proceedings in that country."); *In re Godfrey*,

No. 17-21631-CV, 2018 U.S. Dist. LEXIS 29794, at *28 (S.D. Fla. Feb. 22, 2018) ("Some U.S. district courts have also recognized that English courts are generally receptive to § 1782 discovery."); *In re Annington Funding PLC*, No. 26-mc-61, 2026 U.S. Dist. LEXIS 167708, at *15 (S.D.N.Y. July 24, 2026) (finding second *Intel* factor favors discovery seeking evidence for use in an English proceeding); Sachs Decl. ¶ 57 ("[T]here is no indication that the English Court would not be receptive to [Section 1782 discovery]"). Courts have recognized "ample evidence that courts in the United Kingdom are receptive to this Court's assistance with discovery under Section 1782." *In re Man Grp. Ltd.*, No. 24-MC-559, 2025 U.S. Dist. LEXIS 13372, at *7, *8 (S.D.N.Y. Jan. 24, 2025) (cleaned up); *see also In re in re Credit Suisse Virtuoso SICAV-SIF*, No. MC-21-00051, 2022 U.S. Dist. LEXIS 77476, at *8–9 (D. Ariz. Apr. 27, 2022) ("[T] he Court is not aware of any authority suggesting that an English court would be unwilling to accept discovery under § 1782."). The second *Intel* factor weighs heavily in favor of granting the Application.

3. The Application Does Not Attempt to Circumvent English Proof-Gathering Restrictions

Third, district court may consider "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264–65.

There is no English law or policy precluding discovery taken in the U.S. pursuant to U.S. law. Sachs Decl. ¶¶ 57–58. Furthermore, courts have granted Section 1782 applications when discovery sought was unavailable in the foreign jurisdiction or when the applicant has not first tried to obtain the discovery abroad. *See In re England/Bahamas*, 2021 U.S. Dist. LEXIS 142293, at *16 ("[T]he fact that the requested discovery would not be discoverable in the foreign proceeding is not enough to convert the § 1782 application into an attempt to circumvent the foreign rules."). Indeed, the Supreme Court has rejected the interpretation that § 1782 requires the

evidence sought to be discoverable in the foreign jurisdiction or proceeding. *Intel*, 542 U.S. at 261. Rather, "[p]roof-gathering restrictions are best understood as rules akin to privileges that *prohibit* the acquisition or use of certain materials, rather than as rules that *fail to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information." *In re Bernal*, No. 18-21951-MC, 2018 U.S. Dist. LEXIS 212722, at *22 (S.D. Fla. Dec. 18, 2018) (quoting *Mees v. Buiter*, 793 F.3d 291, 303 n.20 (2d Cir. 2015).

Here, the information Applicant seeks from HSBC is consistent with evidence accepted by the English courts. *See* Sachs Decl. ¶ 58. The requests are not being used to circumvent any English rule of court or any holding by the court in the English Proceeding. *Id*. Therefore, there is nothing about the discovery or evidentiary processes in the English courts that forecloses the present Application, and this *Intel* factor favors Applicant. *See In re Man Grp. Ltd.*, 2025 U.S. Dist. LEXIS 13372 at *8 (noting that the "English Court adopts a permissive approach to obtaining evidence from other jurisdictions for use in litigation before it, including evidence obtained pursuant to Section 1782"); *In re Ex Parte in re Mushegh Tovmasyan*, 557 F. Supp. 3d 348, 357 (D.P.R. 2021) ("T]his is further supported by *Intel* itself, wherein the . . . Court cited an English case stating that the 'House of Lords ruled that nondiscoverability under English law did not stand in the way of a litigant in English proceedings seeking assistance in the United States under § 1782.'" (citing *Intel*, 524 U.S. at 262; *South Carolina Ins. Co. v. Assurantie Maatschappij "De Zeven Provincien" N.V.* [1987] 1 App. Cas. 24). This factor weighs in favor of granting the Application.

4. <u>The Requested Discovery Would Not Be "Unduly Intrusive or Burdensome"</u>

Fourth, courts consider "whether the discovery requests are unduly intrusive or burdensome." *Sergeeva*, 834 F.3d at 1199 (quoting *Intel*, 542 U.S. at 264–65) (citation modified). This Application is not unduly intrusive or burdensome, as demonstrated by Applicant's targeted

requests for documents and communications from HSBC as set forth in the proposed subpoenas attached hereto as **Exhibit 2**. *See also* Sachs Decl. ¶ 59.

The discretionary *Intel* factors therefore all weigh in favor of granting the Application.

## V. <u>CONCLUSION</u>

In light of the foregoing, Applicant respectfully submits that all of the requirements of 28 U.S.C. § 1782 are met and each discretionary factory identified by the *Intel* Court weighs in favor of granting the Application.

WHERERFORE, Applicant respectfully requests that this Court enter an Order:

(a) exercising its discretion, pursuant to 28 U.S.C. § 1782, and granting this *Ex Parte* Application for Judicial Assistance;

(b) granting the Applicant leave to conduct discovery pursuant to the Federal Rules of Civil Procedure, including, but not limited to, leave to serve the subpoena, in substantially the same form as the Sample Subpoena attached as **Exhibit 2** to this Application;

(c) reserving jurisdiction to grant Applicant leave to serve follow-up subpoenas on any other person or entity as may be necessary to obtain the evidence described in the Application; and

(d) granting such other and further relief as this Court deems just and proper.

Dated: August 28, 2026

Respectfully submitted,

<u>*/s/ Christopher A. Noel*</u>

Christopher A. Noel
Alejandro Rodriguez Vanzetti
SEQUOR LAW
1111 Brickell Avenue, Suite 1250
Miami, Florida 33131
(305) 372-8282
cnoel@sequorlaw.com
avanzetti@sequorlaw.com
*Counsel for Applicant*

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)* **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**I. (a) PLAINTIFFS**
KL Capital Limited

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff England
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Christopher A. Noel, Sequor Law, P.A., 1111 Brickell Ave. Suite 1250, Miami, Florida 33131; 305-372-8282

Attorneys *(If Known)*

**(d)** Check County Where Action Arose: ■ MIAMI- DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE ☐ HIGHLANDS

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ■ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)* *(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| ☐ Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| ☐ Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**TORTS**

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Med. Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Acts
- ☐ 720 Labor/Mgmt. Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent – Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act (TCPA)
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ■ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee – Conditions of Confinement

## V. ORIGIN *(Place an "X" in One Box Only)*

■ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Re-filed **(See VI below)** ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district *(specify)* ☐ 6 Multidistrict Litigation Transfer ☐ 7 Appeal to District Judge from Magistrate Judgment ☐ 8 Multidistrict Litigation – Direct File ☐ 9 Remanded from Appellate Court

## VI. RELATED/ RE-FILED CASE(S)

(See instructions): a) Re-filed Case ☐YES ■ NO b) Related Cases ☐YES ☐ NO
**JUDGE:** **DOCKET NUMBER:**

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause ***(Do not cite jurisdictional statutes unless diversity)***:
28 U.S.C. § 1782
LENGTH OF TRIAL via days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23
**DEMAND $**
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ■ No

**ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE**

DATE: 8/28/2026
SIGNATURE OF ATTORNEY OF RECORD: /s/ Christopher A. Noel

**FOR OFFICE USE ONLY : RECEIPT #** **AMOUNT** IFP JUDGE MAG JUDGE